UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL ORRIN BAKER,

    Plaintiff,

v.

                                  Case No. 09-10360

                                  HON. NANCY G. EDMUNDS

BANNUM PLACE OF SAGINAW, LLC;
LATOYA BURNSIDE, DIRECTOR;
DOROTHY JONES, EMPLOYEE SPECIALIST;
CLARINET MCFADDEN; VERTRICE ROBY;
MR. LYONS; HENRY HOBSON; MS. FRIERSON,

    Defendants.

_____ /

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [92]

This matter came before the Court upon Defendants' motion to dismiss and motion for summary judgment. Plaintiff Darryl Baker brings this action *pro se* against Defendants, Bannum Place of Saginaw, LLC, Latoya Burnside, Dorothy Jones, Clarinet McFadden, Vertrice Roby, Mr. Lyons, Henry Hobson, and Ms. Frierson, a private corporation and its employees, asserting violations of his civil rights under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,

1

403 U.S. 388 (1971). For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED.**[1]

I.  **Facts**

Plaintiff is a former federal detainee who was incarcerated with the U.S. Department of Justice, Federal Bureau of Prisons ("BOP") for approximately thirteen years after being convicted of charges involving drug possession and dealing. (Baker Dep. 10:11-17, 20:8-9, Jul. 2, 2012). On or about August 12, 2008, Plaintiff was transferred to Bannum Place of Saginaw, LLC ("Bannum"). Plaintiff resided at Bannum until his release. Bannum is a privately owned limited liability corporation that operates as a Community Sanctions Center ("CSC"), or halfway house in Saginaw, Michigan. Bannum operates pursuant to a federal contract it entered into with the BOP and under strict rules and procedures mandated by the Federal Bureau of Prisons. Plaintiff's complaint alleges claims against Bannum Place of Saginaw, a privately-owned limited liability corporation, and seven of its employees.

Under BOP rules, residents of Bannum are not confined to the facility such that employees are not permitted to prevent residents from leaving the center. Residents are permitted to request movement passes which allow them to leave the premises for various reasons including job searching, religious services, medical treatment, personal

---

[1] On August 22, 2012, the Court granted Plaintiff's request for an extension of time to file a response to Defendants' motion to dismiss/for summary judgment. (Dkt. 93.) The Court gave Plaintiff until September 6, 2012 to respond.  Plaintiff has failed to respond within the Court-ordered time period.  The Court has thoroughly reviewed this case's pleadings and Defendants' motion and issues this opinion and order without Plaintiff's response.

errands, etc. Bannum employees are required to document and report incidents to BOP if and when residents violate the Center's rules. Baker was permitted on several occasions to leave Bannum premises for the above purposes. On January 4, 2009, Plaintiff requested a religious service pass to attend service at the Center of Attraction West. (Amend. Compl. at 13). Plaintiff received a three hour pass, which was approved and signed by a Bannum staff member. (Id.) Further, Baker was permitted movement passes to attend to personal needs such as banking, clothing, and hygiene which were approved by Bannum employees between September 6, 2008 and January 13, 2009. (Id. at 15-16.)

On February 27, 2004, four years prior to his transfer to Bannum, and while incarcerated with BOP, Plaintiff sustained an injury to his left eye, which he alleges, led to a serious permanent impairment in that eye. (Baker Dep. 50: 11-12). While at Bannum, and on December 18, 2008, Plaintiff requested a movement pass to seek medical treatment from Michigan Eye Institute for pain in his left eye. (Amend. Compl. at 32.) The request was approved by a Bannum employee. (Id.) Again, on January 19, 2009 and January 20, 2009, Baker was approved to visit the optometrist at Michigan Eye Institute. (Id. at 33-34.) BOP did not approve payment for the optometrist visits. (Id. at. 32, 34.) However, a Bannum employee filed an incident report on January 13, 2009 noting that Plaintiff failed to show up for the eye appointment at Michigan Eye Institute, which he requested a movement pass for prior. (Id. at 36.)

On January 15, 2009, Baker was put on total building restriction for violating Rule 305, possession of anything not authorized for retention or receipt by the inmate, and

not issued to him through regular channels. The incident was documented in an informal incident report and signed by two staff members. (Id. at 22.) The total building restriction disciplinary action lasted until Baker's release date. (Id.) Reports on the same day indicate that Plaintiff went before the Center Discipline Committee on January 20, 2009 for violating Rule 316, being in an unauthorized area. Baker signed his acknowledgement to his rights when appearing before the Center Discipline Committee Hearing (RRC's) on September 18, 2008 (Id. at 37) which include but are not limited to:

1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Center Disciplinary Committee;

2. The right to have a member of staff who is reasonably available represent you before the Center Disciplinary Committee;

3. The right to call witnesses and present documentary evidence in your behalf, provided Center safety would not be jeopardized;

4. The right to contest under Administrative Remedy procedures or by letter the Bureau of Prisons' decision to the Regional Director within 20 days of notice of the decision and disposition.

In total, Plaintiff went before the discipline committee on three occasions where he was given the opportunity to be represented by a staff member, call and examine his own witnesses, and other rights as previously mentioned, *supra*. (Id. at 11, 27, 38.)

## II. Legal Standards

### A. Rule 12(b)(6) Motion to Dismiss standard.

A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the

complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 679 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Id*. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

### B. Rule 56 Motion for Summary Judgment standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed.R.Civ.P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Cleotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) Citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affadavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) Showing that the materials cited do not establish the absence of presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;

    (2) consider the fact undisputed for purposes of the motion;

    (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

    (4) issue any other appropriate order.

Fed.R.Civ.P. 56(e)."The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hag*er v. Pike *Cnty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### III.  Analysis

Plaintiff brings this action under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by (1) putting him on building restrictions and denying him religious services; (2) denying him due process to grievances and exhaustion of his administrative remedies; (3) retaliating against him for filing civil actions in federal court; (4) failing to perform its ministerial act as prescribed by Bannum's legal duty to the plaintiff; (5) denying him medical treatment, which was the proximate cause of his present and future injuries; and (6) discriminating against him, and other similarly situated residents, on the basis of their sex. (Compl. at 2-4.) Further, Plaintiff alleges a violation of the Tort Claim Act by Bannum employees. (Id.) Plaintiff claims to have

suffered present and future damages including mental duress, mental anguish, pain and suffering, and harassment. (Id.) The Court notes that while Plaintiff brings this action under 41 U.S.C. § 1983, the Court will construe his claim to arise under *Bivens v. Six Unknown Named Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) because Plaintiff claims violations of his civil rights by federal actors.

### A. 42 U.S.C. § 1983 and *Bivens* liability.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). *See also Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S.Ct. 662 (1986)); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Acting under color of state law traditionally requires that the defendant exercise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). The alleged deprivation "must be caused by the exercise of some right or privilege created by the State…or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Atkins*, 487 U.S. at 49; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). It is firmly established that a defendant violates § 1983 while acting in his or her official capacity and when he or she abuses

the position given to them by the State. *See Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961).

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) acknowledged for the first time, an implied cause of action for damages against a federal agent for the violation of a citizen's constitutional rights. *Correctional Services Corp v. Malesko*, 534 U.S. 61, 66, 122 S.Ct. 515, 519, 151 L.Ed.2d 456 (2001). The Supreme Court noted that such an action exists under federal law because "[a]n agent acting – albeit unconstitutionally – in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Cf. Amos v. United States*, 255 U.S. 313, 317, 41 S.Ct. 266, 267-268, 65 L.Ed. 654 (1921). "Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). In *Bivens*, the Court held that a victim of a Fourth Amendment violation by federal narcotics officers may bring suit for money damages against the officers in federal court. *Bivens*, 403 U.S., at 395. The plaintiff in that case was entitled to damages when the officers searched his apartment and arrested him, even though neither the Fourth Amendment nor Congress had ever provided for a private right of action against federal officers. *Malesko*, 534 U.S., at 66; (citing to *Bivens*, 403 U.S., at 396). *See also J.I. Case Co v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (where the court awarded damages as an appropriate remedy "in the absence of any express statutory authorization of a federal cause of action and finding no special factors counseling hesitation in the absence of

9

affirmative action by Congress"). Yet, *Bivens* remedy is recoverable only against individual federal agents in his or her individual capacity. *Malesko*, 534 U.S., at 68. "The purpose of *Bivens* is to deter the *officer*, not the agency" from committing constitutional violations. *Malesko*, 534 U.S., at 68 (quoting *FDIC v. Meyer*, 510 U.S. 471, 485, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (emphasis in original)). *Bivens* does not authorize an action against the Government or its agencies for monetary relief. *FDIC,* 510 U.S., at 486; *Thomas–Lazear v. FBI,* 851 F.2d 1202, 1207 (9th Cir.1988).

In *Correctional Services Corp. v. Malesko*, the Supreme Court refused to extend *Bivens* liability to the Federal Bureau of Prisoners, the United States, or the employer. 534 U.S., at 72. The Court stated that when "a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending *individual officer*, subject to the defense of qualified immunity." *Id.* (emphasis added). The only remedy available to a federal prisoner in that case was against the individual federal prison employee, not his or her employer or the Government. *Id.* Further, the Court noted that alternative remedies are as great or greater than any damages recoverable under *Bivens. Id.* "Federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in Government facilities." *Id*. The Court concluded that the plaintiff did not seek a cause of action against an individual officer nor was he in search of a remedy as in *Bivens. Id.* at 74. Thus, the Court refused to extend *Bivens'* core purpose to any new context not already established by its previous decisions. *Id.*

**B. Plaintiff cannot assert a *Bivens* action against Bannum or its employees.**

In the instant case, Plaintiff cannot recover damages under *Bivens* against Bannum, a privately owned half way house, or its employees. Given that Bannum is a corporate entity, and not a federal or state actor granted authority by Congress, it is not subject to *Bivens* liability. *Malesko*, 534 U.S. at 65. It is firmly established that "a voluntary contractual relationship between a private corporation and the federal government does not make the private corporation an actor under color of federal law." *Yeager v. General Motors Corp.*, 256 F.3d 389, 398 (6th Cir. 2001). The actions taken by the corporation or its agents are thus voluntary and not federal action. *Id.* Just as the Supreme Court in *Malesko* held that federal prisoners have no cause of action under § 1983 or *Bivens* against BOP or Correctional Services Corp, so too Plaintiff in this case lacks such standing to bring action against Bannum. Furthermore, a corporation's employees are considered agents of the corporation or private citizens, and therefore are not subjected to liability under § 1983 or *Bivens*. As noted above, *Bivens* limits liability for a private right of action to *federal agents* acting under the color of law. *Malesko*, 534 U.S., at 66. Privately employed defendants do not fall within this category of persons.

In *Carlson*, a federal prisoner's estate brought an action against the director of the BOP claiming violations of his due process, equal protection, and Eighth Amendment rights as a result of government official's "deliberate indifference" to his medical needs. *Id.* The *Carlson* court held that the plaintiff did have a viable *Bivens* action because the named defendant was an employee of the federal government by way of the Federal Bureau of Prisons. *Id.*

By contrast, the Supreme Court in *Minneci v. Pollard*, 132 S.Ct. 617, 623, 181 L.Ed.2d 606, 80 USLW 4041 (2012), held that a federal prisoner seeking damages from an employee of a private prison could not bring a *Bivens* action for the alleged violation of his Eighth Amendment rights. *Minneci*, 132 S.Ct., at 619. The Supreme Court declined to extend *Bivens* liability to the employees of a private prison under certain circumstances in that case. *Id.* So too, in the present case, Baker brings this action as a federal prisoner against a privately operated half way house and its employees, and thus lacks a valid *Bivens* claim. In *Minneci*, the Supreme Court ultimately declined to imply a *Bivens* remedy because private citizens and corporations are not subject to *Bivens* liability but can be in state tort law;

> [W]here a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case.

*Id.* Since *Carlson* and *Bivens,* the Supreme Court has refused to extend *Bivens* liability in many circumstances. *Minneci*, 132 S.Ct., at 622. A two part test is fairly summarized in *Wilkie v.* Robbins which explains when a *Bivens* remedy is viable to a particular plaintiff. 551 U.S. 537, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2010) (quoting *Bush v. Lucas*, 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Initially, the court must determine whether the named defendant is a federal actor and not a federal agency or the Government. *Bivens*, 551 U.S. 537. Then, the court must decide if there is an alternative available remedy to the plaintiff. Second, it must see whether a new kind of

remedy should be provided for under the law. *Bush*, 462 U.S., at 378. The test is summarized as follows:

> [W]hether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.... But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.

*Lucas*, 462 U.S., at 378 (internal quotations omitted). Following the holding and reasoning of the Supreme Court in *Minneci*, the Plaintiff in the instant case fails to state a claim upon which relief can be granted because his claim is against a private corporation and private citizens. Also, he may be afforded an alternative remedy in state tort law.

### C. Alternative state tort law remedy for federal prisoners against corporate entities and private citizens.

Federal prisoners in Plaintiff's position can bring a state-law tort action against employees of a private firm and against the firm itself. *Minneci*, 132 S.Ct., at 622. And in fact, State tort law "can help to deter constitutional violations as well as to provide compensation to a violation's victim…And it is consequently unsurprising that several cases have considered the adequacy or inadequacy of state-law remedies when determining whether to imply a *Bivens* remedy." *Minneci,* 132 S.Ct., at 624 (citing *Bivens*, 403 U.S., at 394, 91 S.Ct. 1999 (state tort law "inconsistent or even hostile" to Fourth Amendment); *Davis*, 442 U.S., at 245, 99 S.Ct. 2264 (noting no state-law remedy available); *Malesko*, *supra*, at 70, 122 S.Ct. 515 (noting that the Court has

implied *Bivens* action only where alternative remedy against individual officers was nonexistent or where plaintiff lacked any alternative remedy at all) (internal quotations omitted)).

The *Minneci* court noted that state law in the eight States where privately managed secure federal facilities are located, imposes general tort duties of reasonable care, including medical care, on prison employees. 132 S.Ct. 617, 624-25; *see* Dept. of Justice, Federal Bureau of Prisons, Weekly Population Report (Dec. 22, 2011), http://www.bop.gov/locations/weekly_report.jsp (listing States); *Thomas v. Williams*, 105 Ga.App. 321, 326, 124 S.E.2d 409, 412-413 (1962) (In Georgia, "sheriff owes to a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him"). Although state law remedies may not be as plentiful as would be provided in a *Bivens* action, the standard followed by the Supreme Court is "whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations…in practice, the answer to this question is yes." *Minneci*, 132 S.Ct., at 625 (internal quotations omitted). Given that Baker alleges civil rights violations under the Eighth Amendment for denial of medical care and breach of duty of care, the Supreme Court has determined that he must pursue that cause of action under State tort law.

While *Minneci* definitively bars Eighth Amendment claims against individual employees of a private prison, it is still unclear as to whether other constitutional claims,

such as those under the First or Fifth Amendment, are of the type that fall within traditional tort law. *Id.* at 626 ("[W]e can decide whether to imply a *Bivens* action in a case where an Eighth Amendment claim or state law differs significantly from those at issue here when and if such a case arises. The possibility of such a different future case does not provide sufficient grounds for reaching a different conclusion here"). *Id.* However, subsequent Supreme Court decisions may provide some insight. In *Bush v. Lucas*, the Court held that federal civil services procedures provided for meaningful redress of an employee's First Amendment claims for being dismissed by his employer. 462, U.S. 367, 386-388, 103 S.Ct. 2404. In the present case, Baker has full access to remedial mechanisms established by the BOP, "including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program (ARP)." *Malesko*, 534 U.S., at 74. *See also* 28 CFR § 542.10 (2001) (explaining ARP as providing "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement"). Although Plaintiff in this case alleges that Bannum "denied due process of law by being denied the right to grievances to exhaust his administrated remedies," he provides no facts as to whether he was denied access to the ARP process. (Compl. at 4). Further, in *Schweiker v. Chilicky*, 487 U.S. 412, 425, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court held that there was an elaborate administrative scheme for a plaintiff who alleged a violation of the Fifth Amendment to recover when he was denied Social Security benefits. Baker is also provided access to BOP's administrative remedies for his equal protection assertion that he was sexually discriminated against while at Bannum. (Compl. at 4).

In sum, Baker who is a federal prisoner, is not entitled to damages under 41 U.S.C. §1983 or *Bivens* when he alleges violations of his civil rights against a private corporation and its employees under the Eighth Amendment. Similarly, Plaintiff lacks standing according to the same reasoning under the Federal Tort Claims Act given that the parties to this action are neither federal agents of the Government nor the United States itself. Neither Bannum nor the employees named in this action are federal agencies or employees of the government as defined by the Federal Tort Claims Act. 28 U.S.C. § 2671. Yet, Baker may seek remedies from administrative schemes and under state tort law for his remaining allegations. Thus, Defendants are entitled to summary judgment given that there is no genuine issue of material fact and Baker fails to state a valid claim for relief.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.**

**SO ORDERED.**

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: September 10, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 10, 2012, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager